UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WALFRIDO RAMIREZ-CESPEDES (A-Number: 019-646-216),<br>Petitioner,<br>v.<br>CHRISTOPHER CHESTNUT,<br>Respondent. | Case No. 1:26-cv-5506-TLN-JDP<br><br>ORDER; FINDINGS AND RECOMMENDATIONS |

Petitioner Walfrido Ramirez-Cespedes, a citizen of Cuba, entered the United States on October 1, 1971, as a refugee. He was ordered removed to Cuba by an immigration judge on March 26, 1992. Respondent re-detained petitioner on June 10, 2026, and seeks to remove him to Mexico. Petitioner has not consented to removal to Mexico and remains in custody.

Petitioner, proceeding pro se, seeks a writ of habeas corpus under 28 U.S.C. § 2241, alleging that his detention is illegal under *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) and 8 U.S.C. § 1231(a)(6) as his removal is not reasonably foreseeable. ECF No. 1 at 2, 8. Respondent argues that petitioner's ongoing detention is presumptively reasonable. ECF No. 8 at 3. For the following reasons, I recommend that the petition be granted and that petitioner be immediately released.

**Background**

Petitioner, a citizen of Cuba, came to the United States as a refugee on October 1, 1971, when he was eleven years old. ECF No. 8-1 at 3. In 1991, petitioner was convicted of an unspecified offense and served time in state prison. *Id*. Immigration authorities encountered him on August 30, 1991, while he was incarcerated. *Id.* They issued petitioner a notice to appear on January 6, 1992. *Id.* On March 26, 1992, an immigration judge denied his petition for asylum and ordered him removed to Cuba. *Id.* On September 26, 1992, petitioner was released on an order of supervision. *Id.* In 1995, petitioner was convicted of residential burglary and sentenced to prison. *Id.*

ICE re-detained petitioner on June 10, 2026, after his release from criminal custody for an unspecified offense.[1] ECF No. 8-1 at 3. ICE revoked his previous order of supervision based on a violation from May 3, 1995, when he was "convicted of . . . First Degree Residential Burglary [and] sentenced to thirteen (13) years and four (4) months in prison." ECF No. 8-2 at 1-2. The notice of revocation of release also states, "ICE is seeking a travel document to effect your expeditious removal to Cuba." *Id.* The notice does not have a check mark next to the assertion that "[i]t is appropriate to enforce the removal order entered against you as ICE has the ability and means to effectuate your removal." *Id.*

During his informal interview upon revocation of his order of supervision, petitioner stated that Cuba will not take him back because he is a traitor to the country, and that if he is taken back, his life will be in danger. ECF No. 8-2 at 3. On July 18, 2026, ICE gave petitioner notice that it intended to remove him to Mexico. ECF No. 8-3. ICE also gave petitioner notice that it intended to keep him in custody because of his "failure to comply" with removal to

[1] Petitioner's Form I-213 states that petitioner was "imprisoned with the California Department of Corrections (CDCR) at Corcoran State Prison . . . in Corcoran, California, based on his conviction for violation of California Penal Code(s) (PC) 459- First Degree Residential Burglary." ECF No. 8-1 at 2. However, the Form I-213 only lists a conviction from 1995 for three counts of first-degree residential burglary, with a thirteen-year and four-month sentence. Such a sentence should have concluded years ago. In short, the materials provided by the government raise questions but provide little reliable detail about petitioner's criminal history—either its nature or recency.

Mexico, which it deemed in violation of 8 CFR § 241.4(g). ECF No. 8-3 at 4. This notice told petitioner that ICE had decided to "extend" the statutory removal period because petitioner was failing to comply with his "obligation" to leave for Mexico. *Id.* Petitioner has been in immigration custody since June 10, 2026.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law. 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75 (2000). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

**Analysis**

Petitioner asserts that his removal is not reasonably foreseeable under 8 U.S.C. § 1231(a)(6) and *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001), and thus his continued detention is no longer authorized by statute.[2] ECF No. 1 at 13. Respondent argues that petitioner is subject to continued detention pursuant to 8 U.S.C. § 1231(a)(6), and that this detention is presumptively reasonable under *Zadvydas*.[3] ECF No. 8 at 2-3.

In *Zadvydas*, 533 U.S. 678, the Supreme Court considered prolonged immigration detention after a final order of removal. Although the government has statutory authority to

[2] Petitioner filed a motion for appointment of counsel. ECF No. 3. There currently exists no absolute right to appointment of counsel in habeas proceedings. *See Nevius v. Sumner*, 105 F.3d 453, 460 (9th Cir. 1996). Under 18 U.S.C. § 3006A, the court can appoint counsel at any stage of the case "if the interests of justice so require." *See* Rule 8(c), Fed. R. Governing § 2254 Cases. I do not find that the interests of justice require appointment of counsel at the present time. Petitioner's motion to appoint counsel is therefore denied.

[3] Respondent concedes that petitioner's present detention "falls outside the [90-day statutory] removal period" provided in 8 U.S.C. § 1231(a)(1)(A). ECF No. 8 at 2-3.

detain noncitizens for removal, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.*. at 699. The Supreme Court established a burden-shifting framework to determine whether continued immigration detention is lawful and adopted a presumption that immigration detention is reasonable for a period of up to six months, after the final order of removal, when the detention is related to effectuating removal. *Id.* at 701. Respondent argues that is has detained petitioner for only two months of this six-month presumptively reasonable period. ECF No. 8 at 3.

The immigration court ordered petitioner removed to Cuba on March 26, 1992. ECF No. 8-1 at 3. *Zadvydas'* six-month presumptively reasonable period began that day. *See Zadvydas*, 533 U.S. at 682; 8 U.S.C. § 1231(a)(1)(B)(i). Immigration authorities held petitioner in custody from at least March 26, 1992, to September 28, 1992, to attempt to remove him to Cuba. ECF No. 8-1 at 3. They then released petitioner on an order of supervision when they could not remove him. *Id.*

The six-month presumptively reasonable time-period under *Zadvydas* "does not reset when the government detains [a non-citizen] under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again." *Aaron H. v. Chestnut*, No. 1:26-cv-1232-TLN-SCR, 2026 WL 1398910, at *1 (E.D. Cal. May 19, 2026) (quoting *Sied v. Nielsen*, No. 17-cv-6785-LB, 2018 WL 1876907, at *6 (N.D. Cal. Apr. 19, 2018)); *see also Siguenza v. Moniz*, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("Most courts to consider the issue have concluded that the *Zadvydas* period is cumulative, motivated, in part, by a concern that the federal government could otherwise detain noncitizens indefinitely by continuously releasing and re-detaining them."). Accordingly, immigration authorities already detained petitioner for the presumptively reasonable six-month period in 1992, and they are currently detaining him well beyond that period.

Petitioner has given the court good reason to believe that his removal to Cuba is not reasonably foreseeable. *See* ECF No. 1 at 2. Immigration authorities previously detained petitioner for six months in 1992 and were not able to remove him to Cuba. *See* ECF No. 8-1 at 3. When ICE re-detained petitioner on June 10, 2026, petitioner told the ICE officer that Cuba

would not take him back because he is considered a traitor. ECF No. 8-2 at 3. Although ICE asserted on June 10, 2026, that it intended to "seek[] a travel document to effect [petitioner's] expeditious removal to Cuba," it did not indicate that it had the "ability and means to effectuate" petitioner's removal. *See* ECF No. 8-2 at 1. Five weeks later, on July 18, 2026, ICE notified petitioner that it intended to remove him to Mexico instead of Cuba. ECF No. 8-3 at 1. Respondent provides no evidence or argument that it ever sought travel documents for petitioner's removal to Cuba. *See* ECF No. 8. Moreover, petitioner has no removal order to Mexico, and there is no legal requirement that he cooperate with removal to that country. *See Obando Vargas v. Blanche*, No. 1:26-cv-5343-DAD-AC, 2026 WL 2056618, at *2 (E.D. Cal. July 16, 2026) (rejecting the respondents' argument that the petitioner may be detained indefinitely "because [he] is not agreeing to voluntarily depart to a country he is not from and is under no legal obligation to go to").

In *Zadvydas*, the Court directed lower courts to "measure reasonableness . . . in terms of the statute's basic purpose, . . . assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. I find that the evidence before me shows no significant likelihood of removal in the reasonably foreseeable future. Respondent's attempts to remove petitioner to Mexico, where he does not consent to be removed, do not satisfy its burden under *Zadvydas*.

As there is no "significant likelihood that petitioner will be removed in the reasonably foreseeable future," his continued detention is unlawful. *See Aaron H.*, 2026 WL 139890, *2; *Hoac v. Becerra*, No. 2:25-cv-1740-DC-JDP, 2025 WL 1993771, at *4-5 (E.D. Cal. July 16, 2025); *Castillo Rivas v. Bondi*, No. 26-cv-0134-KKE, 2026 WL 295705, at *3 (W.D. Wash. Feb. 4, 2026) (holding that the petitioner was entitled to release under *Zadvydas* where the petitioner, a Venezuelan national, refused to be removed to Mexico).. I recommend that petitioner be immediately released from immigration custody.

**Conclusion**

Accordingly, it is hereby ORDERED that petitioner's motion to appoint counsel, ECF No. 3, is DENIED.

Further, it is hereby RECOMMENDED that:

1. The petition for writ of habeas corpus, ECF No. 1, be GRANTED.

2. Respondent be ordered to immediately release petitioner (A-Number: 019-646-216) from its custody subject to the previously-imposed conditions of release, if any.

3. Respondent be ENJOINED AND RESTRAINED from re-detaining petitioner unless it obtains a travel document for his removal, if necessary, and follows all procedures set forth in 8 C.F.R. §§ 241.4(l), 241.13(i), and any other applicable statutory and regulatory procedures.

4. The Clerk of Court be directed to serve California City Detention Facility with a copy of this order.

5. The Clerk of Court be ordered to enter judgment accordingly and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within seven days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within seven days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: August 7, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE